*H. A. WATERMAN *v.* O. & A. H. BUCK ET AL.

*Supplemental bill.   Demurrer.   Damages accruing after bringing of suit.   Special masters.   Contradictory findings.*

1.  If a defendant would insist that a supplemental bill will not lie, he should do so by demurrer; and if he goes to trial upon the merits without insisting upon this. preliminary objection, he will be deemed to have waived it.

2.  Where suit is brought to obtain damages for past acts of the defendant and to restrain future acts of the same sort, and a temporary injunction is granted to that effect, which the defendant disregards, a supplemental bill will lie to recover damages accruing after the bringing of the original bill, for those damages are really part of the subject matter of the suit which ought to be fully settled in one action, and again that is but another way of accomplishing what might be effected by a proceeding for contempt for not obeying the injunction.

3.  Where a supplemental bill is filed after a master's report has been made upon the original bill, and new questions of fact are thereby raised which are connected with those involved in the first trial before the master, so that the report of the first master must be modified, the better practice is to refer the whole case anew to one master.   In this case the report of the first master having been re-commited to him to revise, and the questions of fact under the supple-

*Heard at the August term, 1890.

Waterman *v.* Buck et al.

mental bill having been referred to a new master, and their reports being utterly inconsistent, the court remanded the cause with directions to refer the whole matter to a new master, unless the orator elected to take a decree for a sum named by the court from an examination of both reports, and less than the decree appealed from.

Bill in chancery to recover damages for injuries done the plaintiff's meadow by the deposit of sawdust and other mill waste in the Gihon river. The case was finally disposed of at the December term, 1889, Powers, Chancellor, by a decree for the orator.

The defendants appeal.

The history of the case and the questions considered are fully stated in the opinion.

*P. K. Gleed,* for the orator.

The right of the orator to proceed by supplemental bill could not be questioned on the hearing before the master. That objection should have been taken *in limine,* and came too late when it was raised.

*Fulton Bank* v. *Canal Co.,* 4 Paige 126; Dan. Ch. 1610; *Lawrence* v. *Bolton,* 3 Paige 294; *Holt* v. *Daniels,* 61 Vt. 89.

The damages accruing after the bringing of the original bill were of a piece with those accruing before. It was all one entire controversy and should, in chancery, be disposed of in one suit. Dan. Ch. 1611 and note; Bea. Eq. Pl. 298; *Barnes* v. *Dow,* 59 Vt. 530; *Hastings' Admr.* v. *Perry,* 20 Vt. 272.

These damages were caused through the violation of an injunction by the defendants in this cause. The orator might have proceeded against them for contempt. Will the court refuse him the milder remedy by which he seeks to attain the same end?

*M. Buck* and *H. R. Start,* for the defendants.

A final decree was made at the April term, 1886, upon the original bill in accordance with the mandate of the Supreme Court. By taking this decree the orator has waived all right to proceed by supplemental bill.

*Pendleton* v. *Fay*, 3 Pai. Ch. 202; *Cader* v. *Allen*, 21 Gratt. 245; *Livingston* v. *Hubbs*, 3 John. Ch. 124; *Boyington* v. *Ingalls*, 70 Me. 463; *Sheffield* v. *Mullin*, 28 Minn. 255; R. L. s. 777.

In order that damages accruing after the filing of the original bill may be recovered by supplemental bill they must result from the identical act complained of in the first bill. ·

*Miller* v. *Miller*, 2 Edw. Ch. 114; *Prouty* v. *Lake Shore & M. S. R. R. Co.*, 85 N. Y. 275; *Hill* v. *Hill*, 53 Vt. 578; *Bardwell* v. *Ames*, 22 Pick. 375.

The cause having been referred to two masters, no final decree could be made in the premises until the coming in of both reports, for the whole cause could not be disposed of until then.

*Nelson et al.* v. *Brown et al.*, 59 Vt. 600; *Dewey* v. *St. Albans Trust Co.*, 60 Vt. 1; R. L. ss. 771, 773 and 774.

The reports of the two masters are hopelessly contradictory, and an examination of the whole case shows that justice can only be done by vacating all former decrees and referring the matter *de novo* to a new master.

The opinion of the court was delivered by

ROSS, J. The orator brought his bill against the defendants O. & A. H. Buck, May 4, 1883, alleging that they were wrongfully depositing the waste from their saw mill in the river Gihon, which brought it upon his meadow, thereby causing him damage, and praying for a temporary and perpetual injunction and for damages. A temporary injunction was granted, but was not observed by these defendants. Other parties operating mills on the stream became co-defendants, who need not be named, nor considered, inasmuch as they have ceased to be interested in

these proceedings. By agreement the case was referred to a special master who reported the facts, and the damages in one general sum, occasioned the orator's meadow to January 1, 1885, when these defendants ceased to deposit the waste from the mill in the stream. A decree was entered for the orator to recover all the damages reported. From this decree these defendants brought the case, by appeal, to this court. By a mandate from this court it was held to be erroneous to give the orator damages later than the date of his bill, and the cause was remanded, to have the damages ascertained to that date, and a decree for the orator entered. 58 Vt. 519. At the April term of the Court of Chancery, 1886, the orator obtained leave to file a supplemental bill to bring in the damages to Jan. 1, 1885. This was filed May 1, 1886, and these defendants filed their answer thereto May 9, 1886, and therein claim that no right to bring in the damages sustained subsequently to the commencement of the original bill, by a supplemental bill, existed, because such damages, they insisted, were not a part or parcel of the subject matter of the original bill, but wholly independent of, and separate from it, and crave the same advantage, as if the objection had been taken by demurrer. At this term the orator filed a motion to have the cause re-committed to the special master, to have him ascertain the damages charged in the original bill, and in the supplemental bill. This motion appears to have been heard April 27, 1886, and a decretal order made of that date. The order assumes that the supplemental bill and defendants' answer thereto, had been filed. It refers the cause of the original bill to the master who made the original report, to have him, from the evidence already before him, ascertain the damages sustained by the orator to the commencement of the original bill, and refers the cause to another special master to find the damages sustained by the orator for the time included in the supplemental bill, from the evidence already taken, and such further evidence as the parties might submit. The chancellor was the special master under the orig-

inal bill. As of this April term, he made an additional report, finding the damages sustained to the date of the original bill, and made a decree thereon for the orator. This decretal order is dated Nov. 27, 1886, and the additional report and decretal order were filed in the cause Dec. 7, 1886. To this action of the special master and chancellor the defendants filed six special exceptions. The date of the filing of these exceptions does not appear, but from their contents, it is evident they were filed subsequently to the filing of the decretal order. These exceptions being subsequent to the decretal order are outside of any rule of practice, but the defendants claim they should have advantage of them, because they claim they had no notice of filing the additional report, or of the decree thereon. There was a hearing upon the matter of the supplemental bill, and the special master's report thereon came on for hearing at the December term of the Court of Chancery, 1889. The master under the original bill found that the orator sustained damages to his meadow to Jan. 1, 1885, to the amount of $700, and by his additional report, of this sum $300 were damages done in the spring of 1884, $300 damages done in the spring of 1883, and $100 damages done before the spring of 1883. By the decretal order filed Dec. 7, 1886, these defendants were decreed to pay two-thirds of the $300, and nine-tenths of the $100. The special master upon the matter of the supplemental bill, reports, that from an examination of the testimony taken before the former master, and his findings in his original and additional report, as well as his orders thereon as chancellor, it appears clear to him that the former master labored under the impression that all the deposits made in 1883, and from which the orator suffered damage, were made prior to May 4th, the time of filing the original bill. But this master finds from the evidence before him, that only a small proportion of the damages sustained from deposits made in 1883 were made before the time when the original bill was brought; that the large amount of deposits made that year, were made a

few days after the original bill was brought, and about haying time ; that if he includes all the damages sustained after the original bill was brought to Jan. 1, 1885, the same are $318.25, but of this amount only $56.25 occurred in the year 1884. He further finds that not over five acres of the orator's meadow was injured by these deposits and that their entire value did not exceed $75 per acre, or $375. He further finds, that of these damages the deposits coming from the defendants' mill, caused only one-half. These are the main facts brought before this court by the defendants' appeal from the final decree against them made at the December term of the Court of Chancery, 1889. On the facts and pleadings, the defendants make several contentions.

They contend that no right to file a supplemental bill existed ; that each wrongful deposit of waste in the river, which caused the orator damage gave him the right to an independent action ; and that such deposits after the bringing of the original bill have no connection with the deposits made before that date. No doubt this would be the case, if the action were at law. Whether it is so in equity need not now be considered. If so, the defendants should have demurred to the supplemental bill, and have insisted upon the demurrer before entering upon a trial of the facts involved, on the evidence. Whether their craving leave in their answer to be allowed the same effect of the facts as if presented by a technical plea amounts to a demurrer and avails the defendants, need not be considered. They went to a trial of the supplemental bill, on its merits, before the special master, and thereby waived the right to have this portion of the answer considered in the nature of a demurrer. *Pinch* v. *Anthony,* 10 Allen 470 ; *Underhill* v. *Van Cortlandt,* 2 John. Ch. 361 ; Note 1, Sec. 1524, Daniel's Ch. Prac. Sec. 1535. *Holt* v. *Daniels,* 61 Vt. 89.

But there is another answer to this contention. The original bill could be sustained in equity on the ground of preventing a multiplicity of suits, and of preventing further wrongs. of the

same kind. This last was secured by a temporary injunction, or restraining order. If the defendants had obeyed this injunction, the wrongs complained of in the supplemental bill would never have occurred. The scope of the original bill as a preventative measure covered the damages brought before the court by the supplemental bill. The orator under the original bill could have recovered for the damages covered by the supplemental bill, by a proceeding for contempt against the defendants for disobeying the injunction. Hence these damages were so connected with, and covered by the original bill, that they could be reached by proper proceedings thereunder. In proceedings for contempt, the remedy administered might have been much more harsh and severe. It is not for the defendants to complain that the orator chose the milder and more equitable method of reaching these damages. Hence the defendants cannot stand upon this contention.

2. The orator's supplemental bill brought no new parties nor new interests, except such as were covered by the temporary injunction, into the suit. It was, therefore, a supplemental bill, rather than an original bill in the nature of a supplemental bill. When the original cause was before this court and remanded to the Court of Chancery, it was not ripe for a final decree, and no final decree was ordered. Further proceedings were to be taken to ascertain the damages sustained before the commencement of the suit. When it reached the Court of Chancery the supplemental bill was allowed to be filed. From this point onward the defendants contend there was error in the action of the Court of Chancery, particularly in referring the matter of the original bill to the former special master, and the matter of a supplemental bill to a new master, and in rendering a decree when the additional report of the former came in, and then another, when the report of the latter came before it. We think this contention in some respects is well taken. Whether the reference of the matter of the original bill to the former master, and that of the sup-

plemental bill to a new master was error is not very clear. There may be cases which would warrant the severance of the matter involved in a single suit, and a reference of it in separate parcels to separate masters. But it is evident that the result reached in this case does not sanction an encouragement of such practice. Considerable confusion and antagonism in the facts found, and conclusions reached, has resulted in this case, which, doubtless would have been avoided, if the reference of the whole matter had been to a single master, or to several masters. Under the circumstances of this case, we think it was error for the Court of Chancery, to undertake to make a decree upon the coming in of the additional report of the first master, on that branch of the case. The supplemental bill, being strictly such, to bring in new matter, and not new parties, only filled out what was lacking in the original bill and brought the orator's full cause, as it had grown to be by the defendants' disregard of the temporary injunction, before the court. It was one cause, demanding one final hearing and decree, on the facts brought in by the reports of both masters. In Story's Equity Pleadings, § 343, the author says, " For if the supplemental bill is not for discovery merely, the cause must be heard upon the supplemental bill at the same time it is heard upon the original bill, if it has not been before heard; and if the cause has been before heard, it must be further heard upon the supplemental matter." Daniels Ch. Pr., § 1536 is to the same effect. In note 8, § 1530, Daniels Ch. Pr. it is said, " And a bill which merely introduces supplemental matter to sustain the relief sought by the original bill is not a supplemental suit, but grafts the new matter into the original suit, and both records are treated as one record." On these authorities, which apply to this case, the Court of Chancery, on the coming in of the second master's report should have looked into the whole record, and have ordered one final decree thereon in favor of the orator against these defendants. The other defendants settled with the orator, in ac-

cordance with the decree of the Court of Chancery made on the original bill and master's report, before the cause came to this court by appeal. Whether in this settlement the orator received too much or too little is no concern of these defendants. They are legally bound to compensate the orator for the damages caused by the waste from their mill, which they wrongfully allowed to go into the stream. The more difficult question is to determine whether on the facts brought before the court by the two master's reports, any decree can be made without further hearing. The first master in his original report says, " I estimate the damage to that proportion of said meadow owned by the orator, in his own right, and occasioned within six years before the bringing of this suit, at seven hundred dollars, of which damage to the amount of $600 was done by deposits of 1883 and 1884, the first before, and the latter after suit brought, and of which, damage to the amount of $100 was done before 1883." Of these he finds that nine-tenths of the $100, and two-thirds of the $600 were caused by the waste from the mill of these defendants. In his additional report this master finds, " All the damages specified in the former report, now on file, and in proportion therein stated, were done and occasioned to the orator's meadow, prior to the bringing of the orator's original bill, *except the* sum of $300, being one-half of the said sum of $600, specified in said report as damages done in the spring of 1883 and in the spring of 1884, said sum of $300 being the amount of damages found by him, as done in the spring of 1884." On these findings the decree as of the April term of the Court of Chancery 1886 was predicated. The second master was ordered to find and report all the damage sustained by the orator subsequently to May 4, 1883, when the original bill was brought, to January 1, 1885. The second master on examining the findings of the first and the decree thereon, and the evidence used before the first,—which he says does not attempt to distinguish whether the deposits made on the orator's meadow in 1883, were made before or after the original bill was brought,

says: "From the foregoing extracts it appears clear to me that the former master labored under the impression that all the deposits made in 1883 and from which the orator suffered damage, were made prior to the filing of the original bill on May 4th, and that the amount already awarded to the orator was intended to cover the damages sustained by him by reason of all deposits made upon his meadow in 1883." He further finds: "At the time when the original suit was brought, there was not more than three-quarters of an acre of land fit to be mowed which had been materially damaged by these deposits, but that owing to high water a few days later, and again about haying time, a large amount of saw-dust, the greater portion of which had been deposited in the stream prior to May 4, 1883, was brought upon the meadow, so that in the opinion of the orator, there were at that time about three acres covered by the same." The result is, if he follows the order of reference strictly, he finds the orator's damages from May 4, 1883, to January 1, 1885, to be $318.25, but, of these, he finds, only $56.25 arose from deposits made after the autumn of 1883. He also finds: "That not more than five acres of grass land have been injured by these deposits, and that the value of the land so injured did not exceed upon an average $75 per acre, or in the whole the sum of $375." He further says, that when he examined the meadow in the summer of 1888, on that portion of the meadow, "Where the saw-dust was deepest, and which the orator claimed was totally destroyed thereby, I found upon a major part of the same a fair crop of grass growing." He also finds that the waste from these defendants' mill occasioned only one-half of these damages. Hence from the reports of the two masters we are left in doubt what decree in damages the orator is entitled to. It is doubtful what period of time the damages found by the first master covers, and the findings of the second are made to depend upon the period covered by the findings of the first. Again the masters differ largely as to the amount of the entire damages and as to the proportion which belongs to these

defendants to pay. It would seem that the findings of the second in this respect, having been occasioned by the supplemental bill filed by the orator, and made on fuller and more evidence, should if either, be given the greater weight, and conclusiveness. We are embarrassed, however, by the fact that the order of the reference to the second master, did not require him to find the amount of the orator's entire damages. This finding was made at the request of these defendants, and they have no occasion to complain if it is adopted as the measure of the orator's right. But if adopted, we are not sure that a decree thereon would not work injustice to the orator, or that he might think it did. We therefore remand the cause, with a mandate, giving the orator the option to take a decree against these defendants for one-half of $375 and interest since the filing of the master's report, or to have the cause referred *de novo*, to another special master, to ascertain from the evidence already in the cause, and such further evidence as the parties may produce the orator's damages suffered from the wrongful acts of these defendants, for the period covered by his original and supplemental bills; the costs to be determined by the Court of Chancery, as equity may require. The cause should be entered, settled, as to the other defendants.